OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio.  Attention:  Walter S. Kobalka, Reporter, or Deborah J. Whitten, Administrative Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions.  The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. Eaton Corporation, Appellant, v. Industrial Commission of Ohio et al., Appellees.
[Cite as State ex rel. Eaton Corp. v. Indus. Comm. (1993),      Ohio St.3d    .]
Workers' compensation -- Commission abuses its discretion in the method by which it determines claimant's impaired earning capacity, when -- Commission can no longer assume that average weekly wage represents a claimant's preinjury earning capacity -- Determination must be made on a case-by-case basis -- Commission must determine post-injury earning capacity in same manner as preinjury earning capacity.

(No. 92-713 -- Submitted February 16, 1993 -- Decided May 5, 1993.)

Appeal from the Court of Appeals for Franklin County, No. 90AP-1364.

Appellee-claimant, Harold D. Derr, injured his shoulder in 1979 while in the course of and arising from his employment with appellant, Eaton Corporation, a self-insured employer. Five years later, appellant challenged appellee's entitlement to ongoing temporary total disability compensation.  Pursuant to commission order, appellant continued to pay temporary total disability compensation during the ensuing administrative proceedings.  Compensation was eventually paid to October 15, 1985.

On November 14, 1986, two of appellee Industrial Commission's staff hearing officers found that claimant's entitlement to temporary total disability compensation ended on September 26, 1984, the date Dr. Mark Weaver concluded that claimant's condition had become permanent.  Temporary total disability compensation paid from September 27, 1984 through October 15, 1985 was declared overpaid and "recoupable by the employer pursuant to the Martin decision [State ex rel. Martin v. Connor (1984), 9 Ohio St.3d 213, 9 OBR 523, 459 N.E.2d 889].  The Commission shall process the employer's request for reimbursement from the surplus fund pursuant to the

Commission['s] normal rules for same." The order was not challenged and appellant was fully repaid from the State Insurance Surplus Fund.

In the meantime, claimant applied for partial disability compensation under former R.C. 4123.57. On October 27, 1987, a district hearing officer found a twenty-three-percent permanent partial disability. The order, however, reduced the award by the amount of "any TT [temporary total disability compensation] overpaid." Since appellant had already been reimbursed from the surplus fund, claimant requested reconsideration, contesting the decision to reduce the amount of partial disability compensation by the amount of compensation previously overpaid.

Claimant prevailed, and on April 21, 1988, a staff hearing officer ordered that the words "less any TT overpaid" be stricken from the October 27, 1987 permanent partial disability order. The commission affirmed on October 20, 1988.

Claimant's decision to receive his partial disability award as impaired earning capacity benefits under former R.C. 4123.57(A) triggered a hearing on May 17, 1990. One week later, claimant submitted to the commission an affidavit that claimed an inability to work due to an alleged restriction against "raising my left arm above my waist." Appellant denies receiving a copy of the document.

The commission, without further hearing, found that claimant had sustained an impairment of earning capacity. In addition to medical evidence, the order was also partially based on the May 24, 1990 affidavit. The order explained:

"* * * that the claimant is age 64, has an 8th grade education, his former position[s] of employment include laborer, machine operator, van operator[;] and that the claimant has been out of the employment market since 1979; that claimant is restricted from work at jobs requiring raising his arm above his waist which is due to the restrictions caused by his allowed industrial injury; that the claimant sought employment * * * [but] claimant was not hired by any of the aforementioned employers.

"It is further the finding of the Commission that the claimant has no formal education for any type of work other than machine work and laborer type employment."

The commission calculated claimant's weekly rate of compensation at $43.99 by multiplying two-thirds of claimant's average weekly wage, $286.90, by claimant's twenty-three-percent medical impairment.

Appellant filed a complaint in mandamus in the Court of Appeals for Franklin County, contesting the commission's award of impaired earning capacity benefits and its refusal to reduce that award by the amount of temporary total compensation previously overpaid. The court of appeals rejected appellant's arguments and denied the writ.

This cause is now before this court upon an appeal as of right.

Willacy & LoPresti and Aubrey B. Willacy, for appellant.
Zwick Law Offices Company, L.P.A., and Leander P. Zwick III, for appellee Harold Derr.
Lee I. Fisher, Attorney General, and Dennis L. Hufstader,

Assistant Attorney General, for appellee Industrial Commission.

Per Curiam. Appellant alleges that the commission abused its discretion in both awarding impaired earning capacity benefits and refusing to reduce the award by the amount of temporary total disability compensation previously overpaid. We disagree with appellant's contentions but, upon review, find that the commission abused its discretion by calculating claimant's impaired earning capacity as it did. Accordingly, the judgment of the court of appeals is reversed in part and affirmed in part.

Appellant's initial propositions invoke res judicata in response to the commission's refusal to reduce claimant's award by the amount of temporary total disability compensation overpaid. Appellant's argument is based on the November 14, 1986 order, in which staff hearing officers, citing State ex rel. Martin, supra, found a "recoupable" overpayment of temporary total disability compensation and ordered reimbursement from the surplus fund. Appellant was fully reimbursed from the fund. On October 27, 1987, a district hearing officer - - presumably unaware that appellant had been repaid - - ordered permanent partial disability compensation paid "less any TT overpaid," in effect ordering claimant to reimburse appellant as well. Claimant's request for reconsideration generated an April 21, 1988 order that deleted the language ordering a setoff against previously paid benefits for temporary total disability. The commission affirmed on October 20, 1988.

Appellant claims that the April 21, 1988 order - - by omitting the setoff language - - impermissibly altered the November 14, 1986 order, which had become final. This action according to appellant, violated res judicata. Appellant's argument, however, assumes that the earlier order authorized repayment from both the surplus fund and the claimant - - an assumption with which we take issue.

The only express directive in the November 14, 1986 order called for repayment from the surplus fund, not from claimant. We find that the order's reference to "recoupment" and the Martin decision - - on which appellant apparently relies - - is insufficient to establish that the order contemplated repayment from the claimant. As to the former, the mere use of the term "recoupment" in cases dealing with repayment by a claimant does not persuade us that the term has developed a special connotation that sets it apart from synonyms such as "repayment" or "reimbursement."

So, too, with Martin. While Martin factually involved repayment by a claimant, its principles extend to reimbursement from the surplus fund to self-insured employers such as appellant. State ex rel. DeLong v. Indus. Comm. (1988), 40 Ohio St.3d 345, 533 N.E.2d 729. The order's reference to Martin, therefore, does not necessarily mean that recovery from claimant was necessarily contemplated.

For these reasons, we find that the commission's April 21, 1988 and October 20, 1988 orders did not modify the November 14, 1986 final order. The later orders did not address appellant's entitlement to surplus fund reimbursement, and since repayment from the claimant was not ordered initially,

the deletion of the setoff language from the October 27, 1987 order did not conflict with the earlier order. The only modification provided by the April 21, 1988 and October 20, 1988 orders was to the October 27, 1987 order, which was not final, having been kept alive by claimant's reconsideration motion. Res judicata was not, therefore, violated.

Appellant also urges vacation of the May 17, 1990 award of impaired earning capacity benefits because (1) due process was violated and (2) it is not supported by "some evidence," as State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936, demands. As to the former, we agree that claimant's submission of his May 24, 1990 affidavit to the commission after the May 17, 1990 hearing on impaired earning capacity, coupled with claimant's apparent failure to provide a copy to appellant, foreclosed response from appellant and thereby violated due process. Bowman Transp., Inc. v. Arkansas Best Freight Sys., Inc. (1974), 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447; State ex rel. Owens-Illinois, Inc. v. Indus. Comm. (1991), 61 Ohio St.3d 456, 575 N.E.2d 202. We do not, however, find that the order must fall as a result. State ex rel. Canter v. Indus. Comm. (1986), 28 Ohio St.3d 377, 28 OBR 437, 504 N.E.2d 26, permits us to simply disregard the affidavit and proceed with our review of the remaining evidence. Unfortunately, inconsistent findings make it impossible to tell what the commission actually found, precluding us from reviewing the order for "some evidence."

Former R.C. 4123.57(A) stated that:

"[T]he employee shall receive per week sixty-six and two-thirds per cent of the impairment of his earning capacity * * *, not to exceed a maximum amount of weekly compensation which is equal to the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code * * *." Am. Sub. H.B. No. 1282, 137 Ohio Laws, Part II, 3946.

A determination would under R.C. 4123.57(A) be simple if mere impairment of earnings were involved. Instead, it involves earning capacity, which connotes not what claimant did earn, but what he or she could have earned. "Capacity," while statutorily undefined, logically encompasses the universe of jobs that a claimant, at a given time, and based on age, education, skills, physical ability, etc., can do. It is noteworthy that R.C. 4123.57(A) directs the payment of sixty-six and two-thirds percent of the claimant's impaired earning capacity. It thus presumably intended that claimant's earning capacity impairment be expressed as a dollar figure.

Because impairment of earning capacity derives from a comparison of claimant's preinjury and post-injury earning capacity, State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263, 559 N.E.2d 1339, two separate earning capacity determinations are necessary. Given our observations above, it follows that preinjury and post-injury earning capacity should be represented monetarily as well, since common denomination facilitates the examination that Pauley mandates and the result that R.C. 4123.57(A) directs. Where the earning capacities are uniformly denominated, the commission need only deduct the dollar value of the employee's post-injury capacity from his or her preinjury capacity in order to determine the amount of impairment. The commission, however, has employed a different

formula, using average weekly wage ("AWW") and medical impairment to designate claimant's preinjury and post-injury earning capacities respectively.  For the reasons to follow, we find that this method constitutes an abuse of discretion.

The formula's initial assumption - - that AWW represents claimant's preinjury earning capacity - - will not always hold true.  Granted, in many cases the position at which the injury occurred is the only job that claimant could do before the injury.  State ex rel. Mt. Carmel Health v. Forte (1992), 65 Ohio St.3d 335, 603 N.E.2d 1014.  In that situation, claimant's AWW may indeed represent the claimant's maximum potential earnings, and, therefore, his or her preinjury earning capacity.  On the other hand, exclusive reliance on AWW could shortchange other claimants, particularly those who are underemployed when injured.  We caution, however, that claimants who allege a preinjury earning capacity in excess of actual earnings have the burden of so proving.  State ex rel. Johnson v. Indus. Comm. (1988), 40 Ohio St.3d 384, 533 N.E.2d 775; State ex rel. Apgar v. Indus. Comm. (1989), 42 Ohio St.3d 5, 535 N.E.2d 1364.

A second flaw in the formula used by the commission is that claimant's post-injury earning capacity is not designated monetarily but is instead represented purely by degree of medical impairment.  Despite the obvious problems of attempting to subtract the proverbial apple from the orange, consideration of medical impairment alone violates State ex rel. Arias v. Indus. Comm. (1990), 49 Ohio St.3d 76, 551 N.E.2d 135, which mandates consideration of nonmedical disability factors such as age, education, training, etc.  Even with identical degrees of medical impairment, no two people have their earning capacities affected in exactly the same way.  For example, a complete loss of lumbar function may have virtually no impact on the ability to earn of an attorney, whose livelihood depends on mental not physical ability.  On the other hand, to a life-long laborer with a sixth grade education, an injured back may represent a one-hundred-percent impairment of earning capacity.  Consideration of nonmedical factors is, therefore, crucial.  However, in any case in which the degree of medical impairment is the sole measure of post-injury earning capacity, the commission either did not consider nonmedical factors, or, upon consideration, concluded that those factors did not, in any way, affect the worker's earning capacity.  We cannot excuse the former or find the latter plausible in this case.

Applying these principles to the instant case, the equation of AWW with claimant's preinjury earning capacity is not an abuse of discretion, given the commission's written findings.  Noting that claimant "has no formal education for any type of work other than machine work and laborer type employment" - - which describes his job with appellant - - the commission's order suggests that claimant's former position of employment represented his maximum preinjury earning potential, and thus defined his earning capacity.

In this case, it is the commission's treatment of post-injury earning capacity and the resulting determination of impairment that highlights the current formula's flaws.  The commission's extensive discussion of claimant's education, work history, etc. convinces us that the commission indeed

considered claimant's nonmedical disability factors.  The order also strongly suggests that any jobs for which claimant is academically or vocationally qualified are precluded by his industrial injury.  Claimant's post-injury earning capacity is, therefore, zero dollars.  Deducting this figure from claimant's preinjury earning capacity of $286.90 results in an impairment, or diminution, of earning capacity of $286.90.  Sixty-six and two-thirds percent of that figure is approximately $191.27.

This is not, however, what the commission awarded.  It instead set claimant's weekly rate of compensation at $43.99. Since this rate is a reflection of the amount of impairment found, we are unable to determine what the commission ultimately concluded.  While its written findings suggest a total impairment of earning capacity, its mathematical computation suggests a lesser impairment.  Absent clarification - - which the commission cannot achieve under its present formula - - our evidentiary review can go no further.

We thus find that the commission abused its discretion in the method by which it determined claimant's impaired earning capacity.  It can no longer assume that AWW represents a claimant's preinjury earning capacity.  The determination must be made on a case-by-case basis.  The commission also may no longer use medical impairment to represent post-injury earning capacity, and must henceforth determine post-injury earning capacity in the same manner as preinjury earning capacity.

For the reasons set forth above, we affirm that portion of the appellate court judgment that found no violation of res judicata.  We also affirm the appellate court's finding of a due process violation.  The balance of the court's judgment is reversed and the cause is returned to the commission for further consideration and amended order in accordance with this opinion.

Judgment reversed in part,
affirmed in part and
limited writ granted.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.